# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:07-CV-431-DCK

| | |
|---|---|
| THOMAS GIBLIN, III, THOMAS GIBLIN, IV, )<br>and REBECCA GIBLIN, individually and as )<br>personal representative of the estate of )<br>RACHEL REYNOLDS GIBLIN, )<br>)<br>      Plaintiffs, )<br>)<br>v. )<br>)<br>NATIONAL MULTIPLE SCLEROSIS )<br>SOCIETY, INC., )<br>)<br>      Defendant. )<br>                                      ) | **ORDER** |

**THIS MATTER IS BEFORE THE COURT** on "Defendant's Motion For Court Determination Of Applicable Law" (Document No. 19) and "Brief In Support Of Defendant's Motion For Court Determination Of Applicable Law" (Document No. 20), filed February 22, 2008; "Plaintiffs' Response To Defendant's Motion For Court Determination Of Applicable Law" (Document No 24), filed March 7, 2008; and "Defendant's Reply To Plaintiff's Response In Opposition To Motion For Court Determination Of Applicable Law" (Document No. 26), filed March 14, 2008. The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c), and this motion is now ripe for disposition.

Having carefully considered the papers, the record, the arguments of counsel at a hearing on March 27, 2008, and the applicable authority, the undersigned will <u>grant</u> Defendant's motion to apply the substantive laws of South Carolina to Plaintiffs' claims.

## I. BACKGROUND

The National Multiple Sclerosis Society, Inc. ("Defendant") is a national fundraising

organization with its principal office in New York, New York, and affiliate offices across the United States, including in Charlotte, North Carolina. One method used by Defendant for fundraising is organizing events in which participants solicit others to donate money to the Defendant based on the distance the participants walk or bicycle in a particular event. Among the events sponsored by the Defendant's Charlotte office was an annual 150-mile bicycle ride called "Breakaway to the Beach."

Thomas Giblin III and his wife Rebecca Giblin, and their two children, 17-year-old Thomas Giblin IV and 15-year-old Rachel Giblin, ("Plaintiffs") solicited funds for the Defendant and participated as riders in Defendant's September 2006 "Breakaway to the Beach." According to the "Complaint" (Document No. 1), Defendant spent more than $31,000,000 during 2006 to promote its fundraising events nationwide and attract potential participants, and raised more than $137,000,000 during 2006, including more than $1,900,000 from the "Breakaway to the Beach" event. Plaintiffs contend that Defendant induced participation by promising safety and support for riders.

On September 16, 2006, while participating in the "Breakaway to the Beach," Plaintiffs were involved in an accident in which a tandem bicycle ridden by Thomas Giblin IV and Rachel Giblin collided with a vehicle driven by South Carolina resident Rudy Devon Robinson. The accident occurred in Marlboro County, South Carolina, near the town of Society Hill. As a result of the accident, Rebecca Giblin, Thomas Giblin IV and Rachel Giblin sustained personal injuries. Rachel Giblin's injuries were fatal. Plaintiffs filed this action on October 12, 2007, seeking recovery for damages under claims of wrongful death and negligence.

On February 22, 2008, Defendant filed its pending "...Motion For Court Determination Of Applicable Law" (Document No. 19) seeking an Order from the Court declaring that South Carolina

substantive law applies to Plaintiffs' claims in this action because the injuries giving rise to those claims occurred in South Carolina.

## II. DISCUSSION

**A. Choice of Law**

This suit between residents of North Carolina and a New York corporation falls within the diversity jurisdiction of this Court pursuant to 28 U.S.C. § 1332. The sole issue at this stage of the litigation is whether to apply the substantive law of North Carolina or South Carolina to Plaintiffs' claims. "Since federal jurisdiction here depends on diversity of citizenship, the applicable law must be determined by the choice of law rules of the forum state, North Carolina." Brendle v. General Tire and Rubber Co., 408 F.2d 116 (4th Cir.1969) citing Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487 (1941); see also, Volvo Const. Equipment North America, Inc. v. CLM Equipment Company, Inc., 386 F.3d 581, 599-600 (4th Cir. 2004). The Klaxon Court opined that "[a]ny other ruling would do violence to the principle of uniformity within a state...." Klaxon, 313 U.S. at 496; see also, Erie Railroad v. Tompkins, 304 U.S. 64 (1938). "Whatever lack of uniformity this may produce between federal courts in different states is attributable to our federal system, which leaves to a state, within the limits permitted by the Constitution, the right to pursue local policies diverging from those of its neighbors." Id.

Defendant's pending motion contends that in personal injury and wrongful death cases, the traditional rule of *lex loci delicti* ("*lex loci*") - the law of the place where the tort was committed - should apply. Black's Law Dictionary 923 (7th ed. 1999).

> In determining the place of the tort, North Carolina courts apply the generally accepted interpretation of the *lex loci* rule that the tort is deemed to have occurred where the last event takes place, that is

3

> necessary to render the actor liable. Injury being the last element of a tort, North Carolina rule, in a nutshell, is the law of the place of injury.

Santana, Inc. v. Levi Strauss and Co., 674 F.2d 269, 272 (4th Cir. 1982). Under the facts of this case, it is undisputed that the last event, or place of injury, giving rise to this suit was in South Carolina.

Relying on a previous opinion of this Court, Plaintiffs contend that where no case offers precise guidance on a choice of law question, this Court must look at the body of North Carolina law to determine what course the North Carolina courts would likely take.

> The parties have identified two possible tests that North Carolina courts might apply in determining the choice of law question raised here. The North Carolina courts may apply the traditional *lex loci delicti* rule or the modern "most significant relationship" test. A review of the case law, as shown below, yields no clear answer because the North Carolina Supreme Court has not specifically addressed the issue and the Court of Appeals has used both tests recently.

United Dominion Industries, Inc. v. Overhead Door Corp., 762 F.Supp. 126, 128 (W.D.N.C. 1991).

### 1. Most Significant Relationship

Plaintiffs concede that *lex loci* is the starting point in determining North Carolina conflicts issues in torts, and that it is the more common approach. (Document No. 24 at 3-5). However, they also contend that the "most significant relationship" test from the Restatement (Second) has guided North Carolina courts in a number of cases, and suggest that it might be applied here. Id. Under the most significant relationship test, a court "determines which state has the most significant relationship to the occurrences giving rise to the action and applies its laws." Red Bull GmbH v. RLED, LLC, 515 F.Supp.2d 641, 649 (M.D.N.C. 2007) citing Food Lion, Inc., v. Capital

Cities/ABC, Inc., 951 F.Supp. 1224, 1228 (M.D.N.C. 1996).

In Lowe's North Wilkesboro Hardware, Inc. v. Fidelity Mut. Life Ins. Co., the Fourth Circuit, citing Klaxon, noted its obligation to follow the prevailing rule of law of North Carolina and to determine the rule that the North Carolina Supreme Court would probably follow. Lowe's North Wilkesboro Hardware, Inc. v. Fidelity Mut. Life Ins. Co., 319 F.2d 469, 472 (4th Cir. 1963). The Fourth Circuit further noted that usually when the North Carolina courts had confronted a choice of law problem in a tort action, it involved personal injury arising from a motor vehicle or train accident in another state, and that the law of the state where the accident occurred would be applied in those cases. Id. The Lowe's case, however, was distinguishable from typical out of state accident cases, and the Fourth Circuit applied the most significant relationship test in determining that Pennsylvania law applied:

> we find it most reasonable, in these circumstances, to avoid a rigid rule and to pursue instead a more flexible approach which would allow the court in each case to inquire which state has the most significant relationships with the events constituting the alleged tort and with the parties. The relative weight due particular factors will vary from case to case, and the court must judge the totality of contacts of the states concerned with the parties and the subject matter.

Lowe's, 319 F.2d at 473.

The Fourth Circuit, quoting the Restatement (Second) Conflict of Laws § 148, has outlined factors to be considered in determining which state has the most significant relationship to the occurrence(s) giving rise to the suit:

> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
>
> (b) the place where the plaintiff received the representations,

(c) the place where the defendant made the representations,

(d) the domicil, residence, nationality, place of incorporation and place of business of the parties,

(e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and

(f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Santana, Inc. v. Levi Strauss and Co., 674 F.2d 269, 273 (4th Cir. 1982). In Santana, the Fourth Circuit found that several states had some contact with the facts and parties of that case, but on balance California was the state "where the relationship was created and where it was centered" and therefore found California law applicable to the tort claims in that case. Santana, 674 F.2d at 274-75. Santana noted however, that in following the choice of law rule of North Carolina, personal injury and wrongful death cases would clearly adhere to *lex loci*. Id. at 272.

The instant case certainly presents numerous factors that could point to the parties' most significant relationship being with North Carolina: the relationship between the parties was created and centered in North Carolina; although Defendant is a New York corporation, its affiliate office in Charlotte, North Carolina organized and promoted the "Breakaway to the Beach" fundraiser; the Defendant's employees and agents responsible for the acts and omissions giving rise to this suit reside in North Carolina; Plaintiffs at all relevant times were residents of North Carolina; the majority of witnesses to be called at trial reside in North Carolina; and the ride began in North Carolina.

If this were the type of case in which the Supreme Court of North Carolina considered the

most significant relationship test, it would most likely find that the substantive laws of North Carolina should apply. But for the accident itself occurring in South Carolina, the facts and claims have almost no connection to South Carolina. Nevertheless, Defendant contends that the instant case is clearly distinguishable from those cases where North Carolina courts have applied the most significant relationship test.

Defendant argues that Lowe's and the other cases cited by Plaintiffs in support of this Court looking beyond *lex loci* to the most significant relationship test are misplaced in that none involve choice of law disputes for personal injury or wrongful death. (Document No. 26 at 3). The Lowe's case involved negligent delay in acting upon an application for life insurance, and the Red Bull GmbH, Santana, and Food Lion, Inc. cases all involved claims for unfair and deceptive trade practices. If Plaintiffs' claims were brought under contract law or for unfair and deceptive trade practices, it is almost certain that North Carolina courts would apply the most significant relationship test.

Defendant concedes that North Carolina courts have looked beyond the principle of *lex loci* in limited and specific situations, but argues that it is clear that North Carolina courts would not deviate from *lex loci* in a personal injury or wrongful death action brought in this state. (Document No. 26 at 6). The undersigned agrees.

**2. Application of *Lex Loci* Test**

North Carolina state cases, as well as federal decisions interpreting those precedents and forecasting what policy the courts would likely follow, have consistently relied on *lex loci* to determine the choice of law in tort cases, particularly those cases involving personal injury or wrongful death.

According to North Carolina law, the substantive law of the state where the injury occurs controls the substantive rights of the parties and the damages recoverable. See Stetser v. TAP Pharmaceutical Products, Inc., 165 N.C. App. 1, 16 (2004) ("the substantive law of the state where the injury occurred would be applied to the plaintiffs' claims . . . as well as determining what damages were available to plaintiffs for any liability resulting from those claims"); Shaw v. Lee, 258 N.C. 609, 610 (1963) ("claimant's right to recover and the amount which may be recovered for personal injuries must be determined by the law of the state where the injuries were sustained"); Ivey v. Rollins, 250 N.C. 89, 92 (1959) (accident having occurred in South Carolina, and the action instituted in North Carolina, "the substantive law of South Carolina determines the cause of action maintainable by plaintiff as well as the measure of damages").

Reaching a result similar to those above, the Supreme Court of North Carolina in its Wise v. Hollowell decision applied the law of Virginia even though that state's statute "differs from ours" as to recoverable damages for a wrongful death. Wise v. Hollowell, 205 N.C. 286 (1933). The Supreme Court, requiring a partial new trial, held that:

> whatever relates merely to the remedy and constitutes a part of the procedure is determined by the law of the forum; but whatever goes to the substance of the controversy and affects the rights of the parties is governed by the *lex loci*. The weight of authority is in support of the rule that in an action for wrongful death, if the injury and death occurred outside the state in which the action is brought, the amount of the recovery is governed by the *lex loci* and not by the *lex fori*.

Id. (citations omitted).

One of the most persuasive and more recent examples of the application of the *lex loci* test is the Gbye v. Gbye decision by the North Carolina Court of Appeals. Gbye involved a lawsuit brought by the father of a minor daughter, individually and as administrator of the daughter's estate,

8

against the mother who was the driver of a car in the accident in Alabama in which the daughter was killed. Because the accident occurred in Alabama, and Alabama provided parents immunity from suit brought by their children, the Court of Appeals unanimously held that the Alamance County Superior Court had properly dismissed the wrongful death action against the child's mother. Gbye v. Gbye, 130 N.C. App. 585 (1998) disc. rev. denied 349 N.C. 357 (1998). The Court of Appeals reached this conclusion despite the fact that North Carolina had specifically abolished parental immunity in cases involving motor vehicle accidents. Id. at 586. In doing so, the Gbye court recognized North Carolina's "steadfast adherence ... to the traditional application of the *lex loci delicti* doctrine" and declined to "carve out a more 'modern approach'" or to find that Alabama's contrary law on parental immunity violated a strong public policy of North Carolina. Id. at 587-88; see also, Caldwell v. Abernethy, 231 N.C. 692, 693 (1950) ("minor child of the plaintiff having been killed in the State of Colorado, the plaintiff's right to recover for the loss of services of such child must be determined by the law of that jurisdiction").

The Gbye decision is consistent with Supreme Court of North Carolina precedent as demonstrated by Shaw v. Lee. In Shaw, the plaintiff wife, a North Carolina resident, brought suit against the estate of her deceased husband for injuries suffered in a car accident in Virginia in which Mr. Shaw was the owner and operator of the vehicle. At least at the time of that case, North Carolina allowed a wife to sue a husband for personal injuries, but Virginia did not. Despite Virginia's contrary position on spousal immunity, the North Carolina court found that *lex loci* was controlling and under Virginia law the North Carolina plaintiff had no cause of action. Shaw v. Lee, 258 N.C. 609, 616 (1963). Thus, the Supreme Court of North Carolina upheld *lex loci* and declined to "voyage into such an uncharted sea, leaving behind well established conflict of laws rules." Id. As

9

in Gbye, the North Carolina court strictly applied the *lex loci* rule even though it denied a North Carolina resident, bringing suit in North Carolina, any chance for recovery. See Howard v. Howard, 200 N.C. 574 (1931) (where accident in New Jersey, laws of that state applied in spousal negligence action, even though contrary to N.C. law); Henry v. Henry, 291 N.C. 156 (1976) (wife allowed to bring negligence action in N.C., site of the underlying accident, even though the laws of the state in which she was domiciled would not have allowed such action). In contrast to Gbye and Shaw, the application of *lex loci* in this case will not deny Plaintiffs an opportunity to pursue their case to trial and to possibly recover significant damages.

Addressing the choice of law issue regarding tort claims, the United States District Court for the Western District of North Carolina has consistently found *lex loci* applicable. "In 1988, the North Carolina Supreme Court refused to adopt the most significant relationship test in a products liability case and instead reaffirmed the well-settled rule of *lex loci* in tort actions, explaining that '[f]or actions sounding in tort, the state where the injury occurred is considered the situs of the claim.'" United Dominion Industries, Inc. v. Overhead Door Corp., 762 F.Supp. 126, 128 (W.D.N.C. 1991) quoting Boudreau v. Baughman, 322 N.C. 331 (1988). "With due regard for the decisions of other federal courts, this Court concludes that based upon recent case law, North Carolina would apply the traditional *lex loci* rule rather than the most significant relationship test. . . . As shown by the Boudreau decision, the North Carolina Supreme Court has shown no lack of confidence in the traditional *lex loci* test for general torts." Id. at 12;. see also, Blankenship v. Sprint Corp., No. 3:03-cv-221, 2007 WL 1387971 at *3 (W.D.N.C. 2007)("For actions sounding in tort, North Carolina adheres to the rule of *lex loci delicit*, that is, it applies the law of the state wherein the injury occurred"); Accretive Commerce, Inc. v. Kenco Group, Inc., No. 3:07-CV-285-

10

W, 2008 WL 413856 at *6 (W.D.N.C. 2008) ("With respect to the tort claims at bar, North Carolina law follows the majority rule in the United States, which provides that matters affecting the substantive rights of the parties are determined by *lex loci deliciti*, the law of the situs of the claim"); and First Care Medical Clinic, Inc. v. Polymedco, Inc., No. 3:05-CV-82, 2006 WL 3497845 at *3 n.2 (W.D.N.C. 2006) ("this Court would apply North Carolina choice of law rules, which follow the *lex loci delicti* analysis for tort claims. Under *lex loci*, North Carolina law governs any tort claims").

The other federal district courts in North Carolina have agreed. In cases like this, the Eastern District has concluded that "[t]he choice of law rule in North Carolina for personal injury and wrongful death actions is clear ... '*lex loci delicti*,' or 'place of the wrong,' 'is the state where the last event necessary to make an actor liable for an alleged tort takes place.'" Hassinger v. Tideland Elec. Membership Corp., 622 F.Supp. 146, 149 (E.D.N.C. 1985)(citations omitted). The Middle District concurs, "[i]n tort claims, North Carolina adheres to the doctrine of *lex loci delicti* which provides that the law of the 'place of the wrong' controls and the place of the wrong is the locale in which 'the last event necessary to make a defendant liable for an alleged tort occurs.'" Hill-Rom Services, Inc. v. Verses Technology, Inc., Nos. 1:03CV1227, 1:04CV1116, 2006 WL 1540851 at *12 (M.D.N.C. 2006). See also, White v. Penske Truck Leasing Corp., 256 F.Supp.2d 440, 445 (M.D.N.C. 2003) ("the law of West Virginia, the place where Plaintiff was injured, governs Plaintiff's negligence claims"); Jordan v. Shaw Industries, Inc., No. 6:93CV542, 1996 WL 1061687 at *15 (M.D.N.C. 1996) ("In personal injury cases, North Carolina courts have consistently applied the doctrine of *lex loci delicti*, which provides that the tort is deemed to have occurred where the last event necessary to render the actor liable takes place").

The Fourth Circuit has also consistently upheld North Carolina's preferred choice of law test

for tort actions. One of the clearest and most cited examples is Brendle v. General Tire and Rubber Co. In Brendle, the sole issue before the Fourth Circuit was which state's law governed a case where a North Carolina plaintiff brought an action against an Ohio defendant arising from an accident in Missouri. Brendle, 408 F.2d 116 (4th Cir. 1969). The Fourth Circuit noted that the litigation was not an appealing one to apply the *lex loci* rule as Missouri had no real connection with either the alleged tortious conduct or the parties. Id. at 118. Missouri was the "place of the wrong" only in the sense that "the last event necessary to make an actor liable" occurred there. Id. As in the instant case, the foreign state where the accident occurred had more restrictive laws that would limit the recovery available for a wrongful death. Also, like the instant case, in Brendle, the decedent's beneficiaries were North Carolina residents and the defendant was a corporation likely carrying "liability insurance in conformity with the Ohio statute allowing unlimited damages." Id. at 120.

The Court in Brendle opined that it was "clear that North Carolina has the most significant relationship with the parties and events" and that the use of forum law would be far more reasonable. Nevertheless, the Fourth Circuit held:

> we are not free to fashion our own choice of law rule, for we are bound by the decisions of the North Carolina Supreme Court. ... the North Carolina decisions clearly reveal the unqualified adherence of the North Carolina Supreme Court to the *lex loci* rule in cases involving personal injury or wrongful death....

Id. Thus the Fourth Circuit found itself obligated to apply *lex loci* even though Missouri had a minimal connection to the events and parties, and despite Missouri laws that were contrary to North Carolina laws and would thereby limit, or even prevent, recovery by decedent's beneficiaries.

The Fourth Circuit has continued to uphold the principles outlined in the Brendle decision. See Santana, Inc. v. Levi Strauss and Co., 647 F.2d 269, 272 (4th Cir. 1982) ("In personal injury and

12

wrongful death cases, North Carolina courts have unequivocally adhered to the *lex loci delicti* rule."); Millers Mut. Ins. Ass'n of Ill. v. Southern Ry. Corp., 483 F.2d 1044, 1046-47 (4th Cir. 1973) (same); Jordan v. Shaw Industries, Inc., 1997 WL 734029 *3 (4th Cir. 1997) (same).

There are, however, two main exceptions to the *lex loci delicti* rule: first, procedural matters, as opposed to substantive matters, are to be governed by the laws of the forum; and second, a forum state may decline to apply *lex loci* if a cause of action recognized by the state where the injury occurred is contrary to a strong public policy of the forum jurisdiction. See 2 Punitive Damages: Law and Prac. 2d § 23:2. There is no issue before the Court as to the first exception for procedural matters, but the Court will consider the argument for a public policy exception.

**B. Public Policy Exception**

The Supreme Court of North Carolina has clearly articulated its view of public policy exceptions as follows:

> It is true that we have held that foreign law or rights based thereon will not be given effect or enforced if opposed to the settled public policy of the forum. However, the mere fact that the law of the forum differs from that of the other jurisdiction does not mean that the foreign statute is contrary to the public policy of the forum. To render foreign law unenforceable as contrary to public policy, it must violate some prevalent conception of good morals or fundamental principle of natural justice or involve injustice to the people of the forum state. This public policy exception has generally been applied in cases such as those involving prohibited marriages, wagers, lotteries, racing, gaming, and the sale of liquor.

Boudreau v. Baughman, 322 N.C. 331, 341-42 (1988) (citations omitted).

The North Carolina Court of Appeals addressed the public policy exception in a wrongful death action where *lex loci* controlled and Georgia's substantive law was followed. Clayton v. Burnett, 135 N.C. App. 746, 749 (1999) disc. rev. denied 351 N.C. 472 (2000). In that case, the

Court of Appeals determined that under Georgia law the Plaintiff, father of the decedent, was not entitled to seek wrongful death damages, and that only the surviving spouse was entitled to pursue such a claim. Id. The court opined, "application of the public policy exception to the *lex loci* principle is not warranted here ... because the accident occurred in Georgia, its laws control who is entitled to bring forth this wrongful death suit." Id.

This Court has previously addressed the issue of public policy exceptions in <u>Mooney v. Wood/Chuck Chipper Corp</u>. In <u>Mooney</u>, the plaintiff was a resident of Mississippi, working for a Pennsylvania corporation, who was injured in Georgia; the defendant was a North Carolina corporation. <u>Mooney v. Wood/Chuck Chipper Corp.</u>, No. 1:99CV207-T, 2000 WL 33422744 at *1 (W.D.N.C. 2000). Mr. Mooney lost part of his arm while feeding brush into a chipper and brought a personal injury claim against the defendant manufacturer. Id. The question before this Court was whether to apply North Carolina's products liability law which does not provide for strict liability, or Georgia's law which does. Id. Defendant manufacturer contended that application of Georgia law would be against the public policy of North Carolina. Id. at *2. Although the North Carolina General statutes explicitly denied strict liability in tort in a product liability action, the Court found:

> no reason to depart from the well-settled choice-of-law rule in North Carolina, *lex loci*, and that such application in this case does not offend the public policy of the State of North Carolina, this court determines that North Carolina would apply the substantive products-liability law of the State of Georgia to plaintiff's claim.

Id.

So again, even though the law of the situs of the injury was contrary to the law as set out by the North Carolina legislature, this Court found that *lex loci* applied, and that no exception under a public policy theory was available.

14

In the instant case, the public policy at issue involves "immunity" for charitable organizations. North Carolina has statutorily repealed traditional blanket charitable immunity protections, while South Carolina statutes limit the damages recoverable against a charitable organization.

Specifically, North Carolina abolished charitable immunity in 1967: "[t]he common-law defense of charitable immunity is abolished and shall not constitute a valid defense to any action or cause of action arising subsequent to September 1, 1967." N.C. Gen. Stat. § 1-539.9 (2008). The enactment of this statute apparently followed close on the heels of a decision by the Supreme Court of North Carolina where that court denied defendant Hospital's plea of charitable immunity, holding that the hospital was not a charitable institution and therefore "liable for the negligence of its employees acting within the scope and course of their employment just as any other corporate employer." Rabon v. Rowan Memorial Hospital Inc., 269 N.C. 1 (1967). The Rabon court denounced charitable immunity as an outdated concept and opined that "this kind of charity should pay its own way, not only as to its office expenses but as to the expense of insurance to pay for torts as well." Id. at 12.

With some exceptions, North Carolina does however still provide immunity from civil liability for volunteers of charitable organizations:

> (a) A volunteer who performs services for a charitable organization or a volunteer engaged in providing emergency services is not liable in civil damages for any acts or omissions resulting in any injury, death, or loss to person or property arising from the volunteer services rendered if:
>
> > (1) The volunteer was acting in good faith and the services rendered were reasonable under the circumstances; and

15

> (2) The acts or omissions do not amount to gross negligence, wanton conduct, or intentional wrongdoing.
> (3) The acts or omissions did not occur while the volunteer was operating or responsible for the operation of a motor vehicle.
>
> (b) To the extent that any charitable organization or volunteer has liability insurance, that charitable organization or volunteer shall be deemed to have waived the qualified immunity herein to the extent of indemnification by insurance for the negligence by any volunteer. ....

N.C. Gen. Stat. § 1-539.10 (2008).

In contrast, while South Carolina law does not provide for total immunity from tort liability for charitable institutions, it does limit liability. The South Carolina code exempts the employee of a charitable organization from liability unless the employee acted in a reckless, wilful, or grossly negligent manner, and is joined properly as a party defendant. S.C. Code Ann. § 33-56-180(A) (2007). In the instant case, only the corporation - National Multiple Sclerosis Society, Inc. - is named as Defendant. Therefore, in its most pertinent part, the relevant statute allows that:

> A person sustaining an injury or dying by reason of the tortious act of commission or omission of an employee of a charitable organization, when the employee is acting within the scope of his employment, may recover **in an action brought against the charitable organization** only the actual damages he sustains in an amount not exceeding the limitations on liability imposed in the South Carolina Tort Claims Act in Chapter 78 of Title 15.

S.C. Code Ann. § 33-56-180(A) (2007) (emphasis added); see also, Smith v. Church Mut. Ins. Co., No. 7:04-23248-HMH, 2006 WL 1890187 (D.S.C. 2006). The South Carolina Tort Claims Act Chapter 78 Title 15, specifically limits recovery from a single occurrence to no more than $600,000.00, regardless of the number of claims or actions involved. S.C. Code Ann. § 15-78-120(a)(2) (2007). The South Carolina Tort Claims Act also proscribes recovery for punitive or

exemplary damages or interest prior to judgment. S.C. Code Ann. § 15-78-120(b) (2007).

This case presents a close call on the question of a public policy exception. On one level, the gap between possible recoverable damages allowed by the two Carolinas, the devastating loss of a teenage daughter, and the fact that the relationship between the parties was created and centered in North Carolina, all cry out for a public policy exception in this case. Nevertheless, with due regard to North Carolina precedents, this Court cannot say with confidence that South Carolina's cap on damages offends the State's "prevalent conception of good morals or fundamental principle of natural justice or involve injustice to the people of the forum state." Boudreau, 322 N.C. at 342. As the Fourth Circuit has observed, "not every statutory provision constitutes a fundamental policy of a state... '[t]he law of a state and its public policy are not necessarily synonymous. Not every law enacted by the legislature embodies the 'public policy' of the state.'" Volvo Const. Equip. North America, Inc. v. CLM Equip. Co., Inc., 386 F.3d 581, 607 (4th Cir. 2004) quoting Cherokee Pump & Equip. Inc. v. Aurora Pump, 38 F.3d 246, 252 (5th Cir.1994)

Furthermore, Plaintiffs have failed to identify a North Carolina precedent for a public policy exception in a personal injury or wrongful death case. The cases Plaintiffs cite are either from other states and/or involve claims distinguishable from the wrongful death and negligence action brought here. In fact, the most analogous North Carolina cases, like Wise, Gbye and Shaw, seem to clearly indicate that North Carolina courts would not allow a public policy exception in this case.

Even if the Plaintiffs feel they are to suffer an injustice based on the contrary policies of North and South Carolina, that difference in policy does not amount to the types of injustices North Carolina courts have found violative of the public policy of the forum state. Application of the substantive law of South Carolina in this case is not analogous to precedents involving unlawful

17

marriage, wagers, lotteries, racing, gaming, liquor sales, unlawful discrimination and sexual harassment where courts have allowed for a public policy exception to *lex loci*. See Mooney, 2000 WL 33422744 at *2.

This case is more like those cases where Courts have recognized North Carolina's firm adherence to *lex loci*, even in instances where the foreign state has a contrary position. This Court is obligated to apply the law as it deems the Supreme Court of North Carolina would under the same facts. United Dominion Industries, Inc. v. Overhead Door Corp., 762 F.Supp. 126, 128-29 (W.D.N.C. 1991). In light of the Gbye decision, discussed above, where the application of Alabama law under *lex loci* denied the father any chance of recovery, this Court cannot find here that North Carolina courts would recognize an exception to *lex loci*. Although the potential for Plaintiffs' recovery is less applying South Carolina law, there is obviously no guarantee that Plaintiffs' actual recovery, if any, will not be as great, or greater, under South Carolina law than it would have been under North Carolina law. This is a difficult case, but this Court is not persuaded that a theoretical difference in recoverable damages is an injustice that merits a public policy exception to the firmly established rule of *lex loci*.

### III. CONCLUSION

Because the last act giving rise to the claim occurred in South Carolina, the law of South Carolina will be applied in this case. As enumerated above, almost all of the relevant facts and relationships in this case stem from activity in North Carolina. But for North Carolina's firm adherence to *lex loci* in tort cases, this matter would most likely be litigated under North Carolina law. However, this Court is obligated to follow the well-settled law favoring *lex loci*. Furthermore, although Plaintiffs make an impassioned argument for a public policy exception, they fail to identify

18

binding precedent or persuasive legal grounds for allowing such an exception in this case.

Faced with similar circumstances, the Fourth Circuit in <u>Brendle</u> opined:

> Use of forum law, as the [Plaintiff] urges, seems by far the more reasonable course. Unfortunately for the plaintiff's contention, however, we are not free to fashion our own choice of law rule, for we are bound by the decisions of the North Carolina Supreme Court. Here, ... the North Carolina decisions clearly reveal the unqualified adherence of the North Carolina Supreme Court to the *lex loci* rule in cases involving personal injury or wrongful death....

<u>Brendle</u>, 408 F.2d 120. The undersigned surmises that this Court is bound by the same rules.

**IT IS, THEREFORE, ORDERED** that "Defendant's Motion For Court Determination Of Applicable Law" (Document No. 19) is **GRANTED**. The substantive law of South Carolina will be applied to Plaintiffs' action for wrongful death and negligence.

Signed: September 23, 2008

David C. Keesler
United States Magistrate Judge